We have just one case on the docket this afternoon. It is cause number 21-30625, Taylor v. LeBlanc. And before we begin, I should let you know that Judge Holt is participating on the panel. He's participating via television, I think. Is he on that screen right there? Yes. Judge Holt, can you hear us? I can. Can you hear me? We can. All right. Is the appellant ready to proceed? Yes. You may. May it please the Court, Phyllis Glazer on behalf of Secretary James LeBlanc of the Louisiana Department of Public Safety and Corrections, who is sued in his individual capacity only. This is a qualified immunity case. Qualified immunity is a two-pronged test, which we all agree on, and both questions require looking at Jimmy LeBlanc's conduct, his personal actions or inactions, as they are alleged by the plaintiff in his operative amended complaint. The first prong... Before you get into that, could I just begin with a record question? Yes, of course, Your Honor. On page five of your opening brief, you talk about... Well, let me step back and say this is about a consecutive set of sentences, right? Yes. You have two different sentences? Correct. And I think it's undisputed this was a consecutive sentence? Correct. Okay. So, as I understand it, the second sentence was originally life, but then was brought down to 20 years for some reason? Correct. On appeal, it was an appellate decision. Yes. Okay. Brought down to 20 years pursuant to an appeal. But that's consecutive to an initial sentence or another sentence, and your brief on page five says completion of his 10-year sentence. Does that mean that there was a five-year or something around five-year sentence plus the 20-year sentence, or am I misunderstanding how this works? That is... That's correct. I'm not exactly sure how much time he had left on the 10-year sentence, because he served some of it on parole, then violated and went back. So, he had some left on that sentence when he came in, and then the 20-year... And it was 20 years without the benefit of probation or diminution of sentence was to be served consecutive to whatever he had left on that 10-year sentence. Okay. That makes sense. So, if the parole time on his first sentence counts towards his 10 years, then we're essentially saying 10 years is roughly December 95 to December 05. Yeah, I think so, except that he would have been eligible to earn good time when he was incarcerated on that 10-year sentence. So, he did serve part of it in prison and then was released on parole and violated while he was on parole after a time and then went back to prison. So, there was... He was eligible to earn good time on that original charge while he was in prison, but not on the 20-year sentence. There was no good time on that one. But in any event, it's whatever was left on that plus 20 years starting in, I guess, February 02? Correct. That is correct. And the reason I'm asking is paragraph 31 of the complaint has sort of an interesting allegation that somebody in the state moved the sentence release date back from 21 to 24 and then eventually 27. I was just trying to figure out what that was all about. I don't know. I don't know. I mean, most of the details I have about the actual underlying sentences were in the commissioner's report, which is in the record starting at page 103 or 104. And so, she detailed his sentences. She didn't clarify how much time he had left on that parole sentence, but... So, we do know about the actual terms of the sentences. And from the replacement brief that was filed, it seems that we're all in agreement that DOC calculated his full-term date at March 16, 2021, and his good time adjusted date at May 5, 2020. I don't know where the allegations came in about moving his date. But, I mean, once his sentence, once he got that double credit for 602 days after he appealed and went through the judicial review process, I mean, he was let out in 2019, which was also less than 20 years from February of 2002. So, I don't know that his constitutional rights were actually violated based even on the allegations in the complaint, the factual allegations anyway. I mean, those are followed up with a conclusion that he was entitled to release earlier, but I'm not sure what the basis of that is. And I don't know... What do you mean that you're not sure that his rights were violated at all? Well, he was sentenced to 20 years without the benefit of probation or diminution of sentence, and he served less than 20 years. Now, once the court gave him double credit, he did actually get credit double, you know, he got two days for every one day he spent in jail before he was convicted of the second felony. And so, well, the fourth, the last felony. And so, I mean, he got more credit than he actually spent in jail. So, he was sentenced to serve 20 without benefit of probation or diminution of sentence. He served 16 and a half or 17 and then got out. And so, that, you know, I don't see a constitutional violation. I don't. I never did. I think that he got the due process he was entitled to when he successfully obtained judicial review of the sentence calculation and his disagreement with the department about how a sentence was calculated was resolved by the court. He got his process and he got released after that. So, if I may, because I want to understand how this works, is your point that 20 years starts on February 02? Yes. And so, that runs through February 22? I mean, that would be 20 years straight would be that. Yeah. But he got extra credit for. Right. So, that. And that's. It would run through February 2022. That's applying the credit for time served once. Correct. Then there's this issue of whether you should apply it twice. What would that be? 602 days? Another. But that's, of course. Right. Sorry. That's correct. Yeah. Another 600. So, he got that same 602 days the second time which is how I think the plaintiff calculated this release date that he's in the new brief. There have been, the plaintiff has given like three or four different calculations of his own release date in the pleading. I mean, there was. I've noticed that as well. Yeah. A couple different ones in the pleadings and then a different one in the briefing. But this most recent 1, the 2019 date, I think is the 602 days. From when they originally calculated his sentence, which was May of 2020. So, but in any event, in any event. If they get if you get 602 days again. That would only apply to whatever outstanding sentence there might have been on the 1st offense. That's what the, yes, the commissioner. That's what, yeah, the commissioner had that 602 days applied to the 1st offense. But a minimum, then I would think that 20 years from if you sort of just take that, let's presuppose there that the 602 wipes out the parole revocation sentence. Then the minimum sentence, it sounds like your position would be is 20 years from February 02. Correct. Okay, thank you. So the, the 1st, the 1st prong of the qualified immunity analysis requires the court to ask if Secretary LeBlanc through his own individual actions violated Percy Taylor's right to timely release from prison. And the 2nd prong asks whether the law at the time of his alleged over detention gave fair warning to the secretary that his conduct, his actions or inactions would violate Taylor's right to timely release from prison. So the mere fact that Percy Taylor alleges that he was over detained does not end the qualified immunity inquiry because fundamentally the court is tasked with determining whether the secretary personally caused that violation or that alleged violation. And the, the Hicks opinion that came out yesterday at late afternoon, as the plaintiffs pointed, the plaintiff pointed out in a 28-J that they filed this morning we were here. But anyway, it, it suggests that you don't need to look at the secretary's conduct at all. That his actions and inactions are irrelevant and that once the plaintiff alleges that he has been over detained, that ends the inquiry. But that is contrary to even what they say in the prior sentence of their 28-J, which is that the 2nd prong of the qualified immunity analysis requires that fair notice inquiry and you can't do the fair notice inquiry without looking at the secretary's actions. Ms. Glaser, I haven't, I've got the 28-J in front of me. So I'll look at it. I can't see how that would be true. That you can't, you shouldn't look at, at the secretary's actions or inactions because even in the Hicks case itself, the secretary got qualified immunity. That is correct. Yeah. In the unpublished opinion before that, the two people who didn't get qualified immunity in Hicks had their own fingerprints on this problem. It was deliberate action. I mean, it was, it was, they did it. Right. A prior opinion in the, in the case, unpublished opinion to be sure, found that the secretary did have qualified immunity. So it's hard to see what Hicks' actual, I mean, I understand Hicks' heck is off the table, but I don't think we're arguing about heck here. We're not because Percy Taylor went through the process. He, he challenged his sentence computation. Like Ellis Hicks, Percy Taylor disputed the state's calculation of his time. Percy Taylor argued he was entitled to another 602 days of jail credit. And Ellis Hicks said he was entitled to more, uh, jail credit than he got. He did get some. It's not reflected in the opinion, but he did, it is in the record of that case, but he did get some jail credit from Arkansas, just not as much as he wanted, which is why it was, anyway, it, um, here is the same thing. But, but unlike Ellis Hicks, Percy Taylor filed an ARP, and after he lost at both steps of the ARP process, he took, he filed a petition for judicial review, which is part of, statutorily, the next step in the ARP process, or the Corrections Administrative Remedy Procedure, and, and he was successful. He won. He got his sentence computation invalidated, um, by a court of competent jurisdiction, and they sent it back to DOC to recalculate, which they did, and then they let him out. Now, that is the process he was due to resolve his dispute about when he was supposed to be released from prison. So, I do realize that in, in Hicks 1 and 2, and in Crittenden, and in Porter v. Epps, and all those cases, this court has said the words, the right to timely release from prison is clearly established, but what isn't clear is what timely is, because timely is going to depend on the facts of each individual person's case. And when- What, what do you make, though, of the allegation, uh, that once, not just the commissioner, but the court itself, uh, issued its order, uh, you had two officials, not LeBlanc, admittedly, but two other officials basically acting as if they don't care about court orders? Well, that brings you back to Hicks. Um, those are, that is allegedly deliberate action on the part of those two officials. Percy Taylor allegedly handed them copies of that opinion, and the judgment, and they didn't act upon it allegedly, but he doesn't say- You're saying, your, your point is LeBlanc has nothing to do with that? Correct. And I don't believe that he's alleged to have anything to do with it. Other than the fact, you know, other than the broad allegation that lots of people held by the state are being over-detained, and LeBlanc knew about it, there's no allegation that LeBlanc is connected to that, that period of, that part of this. Is it a failure to train allegation against, uh, LeBlanc? Is that what's going on here? He should have trained them to pay attention to court orders? No, I don't believe that's the allegation. I, I, um, I mean, I think that they use the phrase- I think it is though, isn't it? You don't, you don't think he has any obligation? No, no, that's not- To let staff know that they need to comply with court orders? No, that is not, no, that is not what I said. No, I don't believe that that's the allegation here. I, I don't believe that they're saying that the people were trained to not comply with were not trained to comply with court orders. I mean, the general broad allegation- The idea is that they should have been trained to listen to court orders. I'm, I'm, I'm, I'm going to ask my question now. The general broad allegation is that he knew about over-detention and he did nothing about it. Well, he, yes, that is the broad allegation, yes. All right. Um, but the, the training, the training allegations here are focused on the sentence calculation, not on what happened after. I mean, like in Hicks, I, I mean, if y'all put out a court order, we, I mean, people have to follow it. I mean, I, I don't think that that requires training. You don't have to go to law school to know that. You know, a judge bangs a gavel and then- That's Connick all over again. That's Connick all over again. Exactly. Everybody had a Brady violation in that case. Um, the question was what led to the Brady violation in that case? And was Harry Connick on notice about a pattern of that Brady violation? Exactly, Your Honor. Thank you, counsel. Excuse me, we're about out of time. Thank you. Uh, Your Honors, may it please the Court, I'm Anya Bidwell representing Appealee Percy Taylor. Um, there are two questions on this appeal. First, uh, did Percy Taylor satisfy his burden at the 12B6 stage to establish that LeBlanc was on notice, that his failure to adopt policies to address errors in reviewing time computations resulted in prisoners held past their release date? That's the first- Can I, can I open with a record question as well? Sure. Uh, I'm looking at page 10 of your brief, and it says that Taylor should have been released September 11, 2018? Yes, Your Honor. But you cite, the only cite you have for this is paragraph 11 of the complaint, which says that the release date should have been something very different. Well, Your Honor, what is undisputed is that Percy Taylor was owed 602 days of his time. That's, um, and the way we- That's not really my question. The question is, should he have been released earlier than the date he was released? Uh, he should have been released 525 days earlier than he was released. What day should he have been released? 502, 502 days or 602 days earlier than some date in the future doesn't really help you, right? You, you have to prove, I take it, your point is September 11, 2018, but the only citation you have for that, I think, is paragraph 11 of the complaint, which doesn't seem to support that proposition. Tell me I'm wrong. I'm sure I am wrong. I just don't understand your brief. Uh, Your Honor, you're not wrong. The point is we incorporated in the complaint the commissioner's report, um, and the, uh, district court order, which specifically says that Percy Taylor was owed 602 days. He was held 525 days- How do you get to September 11, 2018, though? We got to it because his overall release date was supposed to be in May of 2020, May 5, 2020, and we just subtracted 602 days from that, getting us to September 11, 2018. Okay, so you, you just, I assume you heard the exchange I just had with the state's counsel with regard to, uh, the fact that at a minimum there's a 20-year sentence that would seem to run from February 2022. I'm sorry, February 2002. So let's start with that. Do you agree that there was a 20-year sentence? Your Honor, there was a 20-year sentence plus all the offsetting credits. And that's the point here, that the offsetting credits, 602 days of offsetting credits, were denied to him because of LeBlanc's failure to train his employees to properly calculate basic, and the government argues, for example, in Parker, that Parker is a misclassification case, not a miscalculation case. If it only were a miscalculation case, then this would have been different. Well, Your Honors, our case is a straight up miscalculation case. 602 days that were owed to Percy Taylor were taken from him. And that was something that was 100% within LeBlanc's control. He even himself admitted it in his depositions, like, for example, Cretington deposition. So this is a classic prototypical case where the government says they should be held responsible because, frankly, they can do something about it, right? And yet they're saying that somehow there isn't a constitutional violation here. There is very much a constitutional violation, Your Honors, and I want to address Koenig versus Thompson briefly. Go ahead and make your point. I'll ask later. I want to address Koenig versus Thompson because I think we meet Koenig's requirements here. So in 2017, you have a report that specifically homes in on the very error that caused Taylor's detention, right? Failure to count parole when it comes to consecutive sentences versus concurrent sentences. That comes out in September 25th of 2017, specifically talking about this very error. And LeBlanc even responds saying, I understand this. We can fix it through manuals. LeBlanc even says part of the problem is that laws are different. They change from time to time. But we can put it in the manual, and then the employees will be able to see that. But he doesn't put it in the manual. Had he actually showed in the manual how to calculate the parole, concurrent sentences versus consecutive sentences, and that the revocation begins from the date of commission of the crime, not conviction for the crime, had he actually put that in the manual, that would have 100% fixed the problem. And Percy Taylor would have... Can I ask you about paragraph 12 of the complaint? Yes, Your Honor. Paragraph 12 says that the way to calculate the release date is to follow various rules. And one of the rules set forth is that, quote, a defendant, this is according to complaint, a defendant shall receive credit only for time in actual custody and only once during any calendar month when consecutive sentences are imposed. Yes, Your Honor. That's the law that's after 2006. That's not what the complaint says. The complaint says that the statute had issued for calculating Percy Taylor's release date. That complaint, Your Honor, also incorporates the commissioner's report that provides the correct statute at the time. And the government... I think as an act of candor, counsel, you might want to just say that this should be amended. Your Honor, we are happy to amend the complaint, but we satisfy the plausibility standard here. We incorporate the commissioner's report... But is it curious, though... Let me step back and explain why I'm asking this question. Would you... Do you maintain that LeBlanc is strictly liable for every over-detention or just those over-detentions for which he bears responsibility? Your Honor, he is not strictly liable, period, right? We have to meet a very strict burden versus Thompson. There needs to be knowledge, and we showed knowledge. There is a 2017 report that specifically... Very good. So here's my question. Imagine hypothetically, not this case. Hypothetically, you've got a good faith legal disagreement about somebody's release date. We have legal disagreements, obviously, all the time in the federal courts. The district court will deny a motion to suppress. Somebody will serve time, and then the court of appeals will say, you should not have been in jail at all. There are good faith legal disagreements all the time. I guess where I'm getting at is paragraph 12, at a minimum, acknowledges that this is a good faith legal disagreement because paragraph 12 says that the state did it correctly. Your Honor, this is not a good faith legal disagreement. A good example of a good faith legal disagreement is Porter v. Epps, and this is exactly why the commissioner in Porter got policies that could have fixed the situation, and there is quite a bit of discretion in terms of the sentence compilation. How did the state violate paragraph B of paragraph 12 of your complaint? Your Honor, the state violated constitutional right of Percy Taylor because he was detained for 525 days, and there is no dispute as to what were the errors. Are you saying that the state did or did not violate paragraph B? The state violated the law in place at the time in 2006, and LeBlanc himself said that he understands that the difficulty here, part of it, is that laws change. One way he proposed he could address the problem of law changing is by instituting a manual that would actually tell— But what do you make of the fact, though? Again, let's be fair here. This is a legal error, if it is an error, that Taylor himself made in his complaint. I realize this was before you guys were involved in the case, but this is a mistake that Taylor's counsel made. Your Honor, we meet the plausibility standard at the 12B6 stage, and again, the commissioner's report is incorporated as part of the complaint, and the commissioner report says that the decision in the ARP was manifestly erroneous, and there are three mistakes that took place, and those three mistakes could have easily been addressed by a manual or proper training or audit, and the 2017 report puts LeBlanc on notice with a very, very similar level of specificity, much more than in Koenig v. Thompson. In Koenig v. Thompson, Your Honor, what Justice Thomas actually said is, listen, if there were Brady violations, not just about blood evidence, but physical evidence, scientific evidence, lab evidence, if they could have showed that evidence, then there would have been pattern, but they didn't, and here we are actually showing the pattern that pertains specifically to exactly the errors. On that point, you said the September 2017 report should have put LeBlanc on notice of this particular kind of error with respect to consecutive versus concurrent sentences. Anything else? I'll go look at that. So the 2017 report very much talks about the kind of error that led to violation here. The 2012 report, Your Honor, the 2012 report also put LeBlanc on notice because the 2012 report specifically talked about errors in calculating time sentences caused by incompetence of the employees and caused by the lack of resources, including things like the manual, and again, the 2012 report talked about the need for audits, the needs for supervision, and the need for manual, but Your Honor, again, the 2017 report also provides notice, as well as other cases, right? For example, Owens v. Stadler, where it was good time credit. The specific error that you're alleging here in the calculation, when did that occur? The specific error would not have occurred had LeBlanc taken those— No, when did it occur? When did the error occur? Yes, Your Honor. The error occurred—so the constitutional violation itself is 520— Sure, I understand that. —pacts of over-detention. At the minimum, when Percy Taylor said that he is owed 602 days of double credit when he came to Milligan and Hooper, which was in 2018, that— Did the error occur in 2006? The original error, Your Honor, occurred in 2006, but importantly, the 2017 audit is not talking about original errors. The 2017 audit is specifically saying that there are prisoners who are lost in the system whose sentences were improperly calculated, and that's why it's calling for audits. Yeah, I get that. That's not specific enough, though. Just to say that there are improper calculations, I don't know if you're arguing that that's specific enough, but it's not. Your Honor, our argument is very specific in that we are talking about the 2017 report homing in on parole remuneration— Okay, 2017 report. So the error here was in— —consecutive and concurrent sentences. The calculation error here was sometime in 2018. That's right. Okay. That's right. The report 2017, the error in 2018. When did the commissioner's report come out that Hooper and the other guy refused to abide by? So the report came out, Your Honor, in the—let me be exact here. The commissioner's report came out on November 25, 2019. Okay, November 2019. And the allegation is that they didn't abide by it? The allegation is that when Taylor came to them in 2018, right, and told them about this, they did not even understand the argument he was making because they weren't properly trained and there wasn't a manual that they could refer to and see that they owe him $600,000. But again, Taylor's own counsel, I presume, was properly trained and he didn't get it. Your Honor, if you read the commissioner's report, it's unambiguous. The government says that somehow— The complaint is unambiguous, too. Uh, the—the—the opposite— Hey, look, I get your argument, but I think you—just again, out of candor, you should acknowledge paragraph 12 of the complaint is not good for your client. Your Honor, what I would just like to make clear so there is no misunderstanding is that we're not talking about rocket science. We're talking about basic time calculations. We're talking about three specific mistakes that were made and there was notice about these types  It's a mistake made by Taylor's counsel. Sorry, Your Honor. It's a mistake made by Taylor's counsel. Uh, it is, uh, and again, Your Honor, we are happy— Let me just be very honest. I think you'd be better off admitting that Taylor's counsel messed up paragraph 12 because otherwise you're stuck with paragraph 12. I definitely don't want to be stuck with paragraph 12, Your Honor. The point is that we are at the 12b6 motion. It's a plausibility standard and the commissioner's incorporated in the complaint and the commissioner report is not struggling with time calculations. If you look at page six of the complaint, of the commissioner's report, it's ROA 108. It is very clean and very clear with regard to exactly what happened here. And again, those issues could have been easily addressed in the manual. And Mr. LeBlanc knew that he needed to do a manual for a very long time. He acknowledged it. He promised he would do something about it, but he hasn't done it. And in other cases, just to make the point again, they always say miscalculation versus misclassification, right? We are responsible for miscalculations, but somehow not in this case. With respect to the commissioner's report, I assume there are allegations in your complaint with respect to the commissioner's report came out and Hooper and— Yes, Your Honor. Milligan. Where is that in your complaint? We are talking about ROA 78. And we have paragraphs 15, 16, 17, and 19 of the complaint that are talking about that. Yeah, that's them talking to Taylor. That's when Taylor came and discussed with them that he was owed— Commissioner's report came out after that. Oh, you're talking—yes. Then there are his personal delivery of the commissioner's report. That's ROA 84. We're talking paragraphs 38 and 39. Okay. And so the allegation is they did not abide by the commissioner's report. They ignored it. Yes, Your Honor. But it's very important to make something clear here, right? It's not like Hicks where we are talking about them having some sort of a separate broken chain of causation where they're retaliating against him. What we are saying here is that they knew when they looked at the commissioner's report that there was an error, and they just thought that there would be no repercussions for them for making that error, that it's not— They knew—seeing the commissioner's report, they knew there's a mistake that's been made. There's a calculation— There is a calculation mistake that they made, but because— And you're saying they—okay, so what then? Yeah, so what I'm saying is that we are still—we're not arguing that somehow they had bad faith and because of that decided to keep error incarcerated. What we're saying is that it's another example of—it was shown to them that there was a basic error miscalculation, and they didn't feel the urgency to do anything about it because LeBlanc did not set it as a priority. So that's the nature of LeBlanc's deliberate indifference here? No, Your Honor. The nature of LeBlanc's deliberate indifference is specifically with regards to failing to calculate properly, right? Those three mistakes that we discussed. And so everything stems from that basic calculation error. We are not making any allegations that are anything beyond that. So— I mean, the system worked in a sense. It worked in a sense that a grievance was filed, a commissioner's report was prepared. It sort of revealed to officials that that mistake had been made, and then the allegation is they didn't act on that. Your Honor, I want to— We need to connect that to LeBlanc, right? So what you connect to LeBlanc is that had he implemented the manual, had he provided training on how to do sentence calculations with regard to revoking parole, that the constitutional error would not have occurred. That's the basic constitutional violation that was here. He knew that there are mistakes in error calculations. He knew what he needed to do about that, and he didn't do anything leading to Percy Taylor's over-detention. How would a manual have helped the Hooper and Milligan with respect to their reaction to the commissioner's report? Your Honor, it wouldn't. That's not what we're arguing here. What we're arguing here is that the manual would have helped Milligan to understand what Percy Taylor was arguing in the first place and where the 602 days came from. Okay. Thank you. And also, if I may— Counsel, is there any significance— Hold on. Sorry, go ahead. I have a question. Is there any significance to the fact that we're here on a 12B6 versus summary judgment? In other words, the determination would be to get rid of this whole case on 12B6 versus the summary judgment, which is the posture of some of these cases. At least they made it to a motion for summary judgment. This is 12B6. Any significance? Very much, Your Honor. It's very significant. It's just as significant as it was in Parker, right? And Parker was remanded on 12B6 now for discovery on these very questions. So, we need to meet the plausibility standard here. And we do meet the plausibility standard. Thank you, Counsel. Your time has expired. The bottom. Before you get started, I'm curious. Milligan and Hooper, at least it's alleged that they basically ignored a court order, right? You agree that's been alleged? Yeah, that's what's alleged, yes. Any evidence in the record as to their current employment status? I believe—oh, I think they're both still employed, if not retired or soon to be retired. I mean, they were alleged to have— Here's where I'm going. Here's where I'm going here, is I take Taylor's best argument. As you've heard, I really don't buy that this was such an egregious error that the error itself was actionable against LeBlanc, just because Taylor's own counsel appears to have made the exact same error. And I think I heard a concession that there was no bad faith here. The better argument for Taylor seems to be the violation of the court order. Now, I take your argument to be that that's not something you should have to train. It should be painfully obvious. But that leads me to the question, did LeBlanc at least discipline or terminate these two employees for violating a court order? Well, they're alleged to have violated a court order. That doesn't mean that they did violate a court order? In other words, you can dispute that as a factual matter. Right, yeah. So, I mean, for right now— Doesn't that survive 46? For right now, we are accepting as true that they got copies of the commissioner's report and didn't do anything with it. But to answer your question as a matter of fact, no, they were not disciplined for ignoring a court order, because they, in fact, did not. But that's not what's alleged. No, no, fair enough. I'm sorry. Just out of curiosity, I realize this is all subject to a fact dispute and a fact proceeding, but you're saying it is not—you plan to deny that they violated the court order? Absolutely. Can you sort of spell that out a bit here? Well, for one thing, even if Percy Taylor gave them this—well, the commissioner's report was not the judgment. So the judgment came out later. But DOC— Right, but the judgment came out—I respect that distinction. I think of the commissioner's report as sort of an R&R by magistrate. Yeah, basically. But the court issues its order on January 13, 2020. And sends it to DOC's counsel at headquarters, who was enrolled in the case. Okay, so you're saying that—so your point is by January 13, 2020, the process then went forward appropriately? I think that the process went forward appropriately after they got the commissioner's report. As a matter of fact, I'm not sure when exactly they received the judgment. I mean, there's a notice of mailing, but I don't know when they actually had it in hand. But I mean, as a matter of fact, they—I'm not exactly sure what exactly Gordon Hooper and Robin Milligan did if, in fact, they did speak with Percy Taylor or receive copies of the judgment. But I know that they didn't ignore it. They never ignored him. I mean, the complaint alleges that he met with Robin Milligan seven to ten times going back to June or something of 2017 before the legislative auditor's report came out, which was October, by the way, according to paragraph 57 of the complaint on page 87 of the record. The legislative auditor's report was October 25, 2017. I mean, they never ignored him. They never—this is a deliberate indifference case. Whether we're talking about the secretary, we're talking about Milligan and Hooper, the standard governing their conduct is deliberate indifference, and they, as a matter of fact, never ignored him. Now, did the plaintiff allege Milligan and Hooper ignored the commissioner's report? Yes. That's alleged. That's the allegation against them, and they're not here. But not—that's not so much the same thing as LeBlanc. As I said when I started, we have to look at LeBlanc's conduct. He never disregarded—well, he didn't know about Percy Taylor, but there was no disregard for knowledge that he had of a particular problem. The 2012 lien six sigma is discussed in paragraph 70 of the amended complaint record, paragraph—page 91. It doesn't say anything about— May I ask you—I know you're out of time, but— Oh, sorry. —the specific argument made here was that the 2017 report should have put LeBlanc on the kind of notice required by CONIC. What's your response to that? That was 11 years after his sentence was calculated, which was before LeBlanc became secretary, and it was the basic calculation error that led to the constitutional violation, and the error wouldn't—the auditor's report, as described in the complaint, wouldn't have put him on notice of this particular problem, which even the commissioner said was a—it was just an error. It was just a mistake. Mistakes happen, as we heard this morning. Mistakes happen, and— Is the 2017 report in the record? I know it's— No. It was mentioned in the complaint, but I don't believe it—no, it was not attached. We can check. Yeah. I think that they asked that it be judicial notice. Okay, well— So. All right. Who knows? Thank you. Thanks, Judge Ho. The court will take this matter under advisement. We are adjourned.